IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ERIC O'BRIEN JOHNSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:14-cv-141 (CAR) (CHW) |
| | : | |
| Deputy Warden GEORGE IVEY, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff Eric O'Brien Johnson, who is presently confined at Valdosta State Prison, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 on April 11, 2014. Doc. 1. According to Plaintiff's Complaint, the present action arises out of an unwanted haircut occurring on January 24, 2014, while he was confined at Hancock State Prison ("HSP"). Following the adoption of the Magistrate Judge's frivolity review pursuant to 28 U.S.C. § 1915A, Defendants filed their Answer on June 30, 2015, Doc. 33. Defendants filed their Motion for Summary Judgment on October 23, 2015 (Doc. 42) at the conclusion of discovery; and Plaintiff has filed his Response (Doc. 46), as well as a supplemental response (Doc. 48).

Defendants raise three arguments in support of their Motion for Summary Judgment: (1) Plaintiff did not exhaust his administrative remedies; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff's claim is without merit. As Plaintiff does not present a genuine of material fact as to whether the force used during his haircut was excessive, and Defendants are entitled judgment as a matter of law, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 42) be granted. It is further **RECOMMENDED** that Plaintiff's Motion for Protective Order (Doc. 39) be **DENIED** because Plaintiff's deposition can be considered on summary judgment under Rule 56(c).

I.      MOTION FOR PROTECTIVE ORDER

Before the Court can address Defendants' Motion for Summary Judgment, it must consider an earlier Motion filed by Plaintiff. On September 14, 2015, the Clerk's Office received Plaintiff's Motion for Protective Order. Doc. 39. In the Motion, Plaintiff contends that Defendants deposed him without proper notice and thus his deposition cannot be used against him pursuant to Federal Rule of Civil Procedure 32(a). *Id.*

Rule 32(a) addresses the use of depositions at court proceedings and specifically provides in 32(a)(5)(A) that a deposition taken on "short notice … must not be used against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order." Fed. R. Civ. P. 32(a)(5)(A). Regardless of Plaintiff's motion, this Court need not decide whether the use of Plaintiff's deposition should be limited under Rule 32(a). The Court can consider Plaintiff's deposition for Defendants' Motion for Summary Judgment because it is admissible under Rule 56(c). Rule 56(c) provides that in order to support a motion for summary judgment, testimony must be sworn, competent and on personal knowledge, and set out facts that would be admissible in evidence at trial. Fed. R. Civ. P. 56(c). "Depositions, even those taken without notice to or the presence of the later non-moving party on summary judgment, can contain such testimony." See *Vondriska v. Cugno*, 368 F. App'x 7, 8-9 (11th Cir. 2010). Because Plaintiff's deposition is sworn and admissible to the extent that Plaintiff's testimony was competent, on personal knowledge, and set out facts admissible at trial, this Court may consider the testimony proffered in Plaintiff's deposition. See *Bozeman v. Orum*, 422 F.3d 1265, 1267 n. 1 (11th Cir. 2005) abrogated on other grounds by *Kingsley v. Hendrickson*, ___ U.S. ____, 135 S. Ct. 2466 (June 22, 2015) (holding that sworn statements before a court reporter where non-moving party was neither noticed nor present satisfied requirements of the Federal Rule for

2

Summary Judgment)); 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2142 (2d ed.1994) (stating that deposition testimony is "at least as good as an affidavit and should be usable whenever an affidavit would be permissible").

In connection with the recommendation to grant Defendants' Motion for Summary Judgment, it is further **RECOMMENDED** that Plaintiff's Motion for Protective Order be **DENIED** as Plaintiff's deposition can be considered on summary judgment under Rule 56(c).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Verbraeken v. Westinghouse Elec. Corp*., 881 F.2d 1041, 1045 (11th Cir. 1989).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See *id*. (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)). In

determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla*., 630 F.3d 1346, 1353 (11th Cir. 2011). However, "unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (quoting *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980)).

### III. EVIDENCE PRESENTED

Petitioner asserts in his complaint, responses, and deposition that Defendants Floyd, Barney, Burtos, and Wright used excessive force when they held him down so that his hair could be cut. Doc. 1. Defendants proffer video evidence[1] that shows that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law concerning Plaintiff's excessive use of force claim. See DVD, Doc. 44. The United States Supreme Court has recognized a "wrinkle" in cases where the record contains video evidence, holding that when facts are disputed, and video evidence is present, a court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). Following the Supreme Court and viewing the facts in the light depicted by the videotape, the facts in this case are as follows.

### a. The Haircut

On the morning of January 24, 2014, Plaintiff, a Tier II program[2] inmate at Hancock State Prison, was directed by Deputy Warden Ivey to get a haircut because his hair was too long.

---

[1] The authenticity of the video recording is sworn to by Sylvia Graham, the Administrative Assistant at Hancock State Prison, in her affidavit. *See* Def. Ex. 1. Aff. Of Sylvia Graham (Doc. 42-3).
[2] The Tier II program is a GDOC classification designation. Aff. of George Ivey, Doc. 42-6, p. 3. Plaintiff is a "Tier II" because the GDOC has made a determination that Plaintiff is a threat to the safe and secure operation of the

4

Pl.'s Dep, p. 18, 5-24; Pl.'s Dep, p. 40, 16-18; Aff. of George Ivey, Doc. 42-6, p. 3. Plaintiff responded that his hair was within the Standard Operating Procedure, and that he "did not desire" a haircut. Pl.'s Dep, p. 20, 24-25. Plaintiff does not believe he "refused a haircut," rather he was exercising his "right to not have [his] hair cut." Pl.'s Dep, p. 21, 3-5.

Because Plaintiff refused the haircut, Plaintiff was bound in "plexi-cuffs" through the tray door and escorted to the showers by CERT team members Quintodd Barney, Patrick Wright, Rontrell Burton, and Kwanta Legette. Pl.'s Dep, p. 21, 15-16; Doc. 42-6, p. 3; Aff. of Edward Floyd, Doc. 42-7, p. 3. As the dorm was undergoing a shakedown, Plaintiff was placed in the shower for forty-five minutes to an hour, until the shakedown was completed. Pl.'s Dep, p. 23, 1-8; Aff. of Edward Floyd, Doc. 42-7, p. 3.

Once the shakedown was completed, the CERT team removed Plaintiff from the shower and attempted to place him in the barber chair on the other side of the cell block. Pl.'s Dep, p. 23, 11-17; Doc. 42-7, p. 3; DVD 1 of 2, Doc. 44, 1:00-1:50. During the transfer from shower to barber chair, the CERT team led Plaintiff to the middle of the cell block and bound his feet with foot cuffs. DVD 1 of 2, Doc. 44, 1:39. Plaintiff's hands were still restrained in plexi-cuffs. Pl.'s Dep, p. 23, 18-20. Plaintiff also threatened CERT members with various insults while being transferred.[3] DVD 1 of 2, Doc. 44, 1:12-1:24; Aff. of Edward Floyd, Doc. 42-7, p. 3. As the CERT team attempted to place Plaintiff in the barber chair, Plaintiff resisted and kicked the chair from under him. The CERT team placed Plaintiff on the floor in a prone position instead. DVD 1 of 2, Doc. 44, 1:50-2:06; Aff. of Edward Floyd, Doc. 42-7, p. 4. The CERT members repeatedly told Plaintiff to stop resisting. DVD 1 of 2, Doc. 44, 2:16-2:40.

---

"facility such that he was required to live in administrative segregation and was subject to additional security measures over those inmates in general population." *Id.*

[3] At one point, Plaintiff looked directly at the camera and told the videographer: "you a dumb nigger, you aren't nothing but a bitch ass nigger, […] if I could I'd kill your fuck ass nigger, I tell you what, I'd tear your ass up." DVD 1 of 2, Doc. 44, 4:12-4:24.

5

Defendant Floyd used electric clippers to cut Plaintiff's hair. DVD 1 of 2, Doc. 44, 2:50-5:10; Aff. of Edward Floyd, Doc. 42-7, p. 4. During the haircut, Plaintiff issued more threats: "I'll kill y'all when this is all over with" (DVD 1 of 2, Doc. 44, 3:21-3:25); "I'm gonna get y'all" (DVD 1 of 2, Doc. 44, 3:57-3:59).

Due to Plaintiff's continued resistance, the CERT team postponed the haircut, lifted Plaintiff off the floor, and took him back to his cell. DVD 1 of 2, Doc. 44, 5:10-6:00. The CERT team placed Plaintiff on the floor in his cell. DVD 1 of 2, Doc. 44, 6:00-6:36. Due to his recent behavior and agitated state, the Defendants restrained Plaintiff's legs to prevent him from kicking, and his t-shirt and boxer shorts were cut off of him. Aff. of Edward Floyd, Doc. 42-7, p. 5; DVD 1 of 2, Doc. 44, 6:36-9:33.

After leaving the cell, the CERT team repeatedly summoned Plaintiff to the cell door so that his hand cuffs could be removed. Aff. of Edward Floyd, Doc. 42-7, p. 5; DVD 1 of 2, Doc. 44, 9:39-10:15. Standard safety protocol for Tier II prisoners provides that the prisoner remain handcuffed until the officers leave the cell and that cuffs be removed only then through the cell door flap. Aff. of Edward Floyd, Doc. 42-7, p. 5. Plaintiff refused to come to the door, claiming that he could not stand due to the pins in his legs.[4] Aff. of Edward Floyd, Doc. 42-7, p. 5; DVD 1 of 2, Doc. 44, 10:30. At that time, Defendant Floyd was not aware of any medical condition that limited Plaintiff's mobility in that fashion, and Plaintiff had shown no such limitations when he had resisted his haircut a few minutes prior. Aff. of Edward Floyd, Doc. 42-7, p. 5; see DVD 1 of 2, Doc. 44, 2:50-5:10. As a result, the handcuffs were not removed at that time. Aff. of Edward Floyd, Doc. 42-7, p. 5.

---

[4] Plaintiff has been diagnosed with a condition called degenerative bone deterioration. Pl.'s Dep, p. 15-16. Plaintiff also has pins in both hips. Pl.'s Dep, p. 15-16, 3-8.

6

During the course of his haircut, Plaintiff did not mention a cut or injury. See DVD 1of 2, Doc. 44, 2:50-5:10. Plaintiff did not wince or cry out in pain. *Id.* Video of the top of Plaintiff's head revealed two small red marks with a small amount of blood on the left hand side.[5] DVD 1 of 2, Doc. 44, 6:36.

### b. Medical Response Following Haircut and Plaintiff's Medical History

Plaintiff was then seen by Nurse Shinholster, LPN, through his cell window, for "security purposes;" Plaintiff was "very upset and deranged." Pl.'s Dep, pp. 41, 10-12; Aff. of Joanne Shinholster, LPN, Doc. 42-4, p. 2. She noted that Plaintiff had a "small laceration at the top of [his] head" and determined that Plaintiff did not require immediate medical attention. Aff. of Joanne Shinholster, LPN, Doc. 42-4, p. 3. Later that day, a lieutenant returned to cut the remainder of Plaintiff's hair. Pl.'s Dep, pp. 14-20, 43.

The following day, January 25, 2012, Plaintiff was sent to medical in reference to the cut on his head and for a use of force assessment. Pl.'s Dep, pp. 14, 47. Nurse Barbara Reeves, LPN, conducted the standard use of force assessment on Plaintiff and found a small, "healing laceration" of approximately one inch on the top of Plaintiff's head. GDOC Use of Force Assessment, Doc. 42-3, p. 22; Aff. of Barbara Reeves, LPN, Doc. 42-5, p. 3. She found no other injuries on Plaintiff and advised Plaintiff to keep the laceration clean and dry. Aff. of Barbara Reeves, LPN, Doc. 42-5, p. 3.

### c. Disciplinary Hearing

Following the haircut, Hancock staff issued an incident report detailing the events of the morning of January 24. See Incident Report, Doc. 42-3, p. 5. Plaintiff also received a disciplinary report for failure to follow instructions, verbal threats, and insubordination. See Aff. of Quintodd

---

[5] Plaintiff states that his "entire head was covered in blood," but that assertion is not supported by video evidence. Pl.'s Dep, p. 42, 21-22.

Barney, Doc. 42-8, p. 6; Disciplinary Report Work Sheet, Doc. 42-3, pp. 27-28. Plaintiff was found guilty at the disciplinary hearing and was advised of his right to appeal. Disciplinary Report Work Sheet, Doc. 42-3, p. 28. Plaintiff received a punishment of thirty days impoundment of personal property and ninety days of library, telephone, package, and store restrictions. Doc. 42-3, p. 27.

## IV.   DISCUSSION

Plaintiff now brings this action, pursuant to 42 U.S.C. § 1983, asserting a violation of his Eighth Amendment rights. In response, Defendants argue that (1) Plaintiff did not exhaust his administrative remedies; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff's claim is without merit. As Plaintiff does not present a genuine of material fact, and Defendants are entitled judgment as a matter of law, it is recommended that summary judgment be granted.

## V.   EXHAUSTION

Defendants argue that they are entitled to judgment as a matter of law because Plaintiff failed to exhaust all administrative remedies available to him. Doc. 42-1, pp. 9-10. Specifically, Defendants argue that Plaintiff failed to appeal his disciplinary hearing. See *id.* In response, Plaintiff argues that he need not have appealed his disciplinary hearing to bring this excessive force claim. Doc. 46-1, p. 4-5. Plaintiff also presents evidence to show that he exhausted his administrative remedies through the GDOC grievance procedure. Doc. 46-1, p. 6; Doc. 46-7, pp. 2-5.

The Eleventh Circuit dictates that before this Court may address Plaintiff's claims on the merits, it must determine the "threshold matter" of whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that

exhaustion is "a precondition to an adjudication on the merits"); *Chandler v. Crosby,* 379 F.3d 1278, 1286 (11th Cir. 2004) (calling the question of exhaustion under the PLRA a "threshold matter"). The PLRA reads, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The record reflects that after a disciplinary hearing following the events alleged in Plaintiff's complaint, Plaintiff was found guilty of three disciplinary charges and sanctioned with thirty days impoundment of personal property and ninety days of library, telephone, package, and store restrictions. Doc. 42-3, p. 27. Defendants argue that Plaintiff did not appeal the disciplinary hearing findings and therefore did not exhaust his administrative remedies. However, Plaintiff is not challenging, through this lawsuit, the disciplinary hearing findings, the due process afforded him in the disciplinary proceedings, or the sanction imposed. See Doc. 1. Rather, Plaintiff seeks relief for the injuries he claims he suffered at the hands of the Defendants.

The Eleventh Circuit has held that the term "available" as used in PLRA's exhaustion requirement "means that inmates must exhaust administrative remedies so long as there is the possibility of at least some kind of relief." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004)). Defendants point to no evidence that any form of relief for Plaintiff's injuries was available to him through the disciplinary process. Further, the disciplinary process and the exhaustion of Plaintiff's injury claim are not interdependent. While a prison grievance process and Plaintiff's injury claim would be interdependent to the extent that exhaustion of the grievance process would be required, Defendants have not argued that Plaintiff failed to exhaust such a grievance process. *Id*. at 1156.

Indeed, the disciplinary appeals process could not have afforded Plaintiff any relief for the injuries he suffered. Therefore, Defendants have not shown that Plaintiff's lawsuit is barred for failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that exhaustion under the PLRA is an affirmative defense).

VI.   PHYSICAL INJURY AND THE PRISON LITIGATION REFORM ACT

Defendants also argue that the presented evidence, including the DVD, medical records, and the declarations of Nurses Shinholster and Reeves, show that Plaintiff's injuries were not greater than the *de minimis* standard set out by the Eleventh Circuit and that "his complaint should be dismissed in its entirety under the Prison Litigation Reform Act." Doc. 42-1, p. 19-20. Defendants misinterpret the PLRA.

Pursuant to § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Although section 1997e(e) does not define what constitutes a physical injury, the Eleventh Circuit has concluded that in order to satisfy the statute "the physical injury must be more than *de minimis,* but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated in part on other grounds, 216 F.3d 970 (11th Cir. 2000) (en banc); *see also Mitchell v. Brown & Williamson Tobacco Corp*., 294 F.3d 1309, 1312–1313 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.") (citation omitted). Thus, in the Eleventh Circuit, it is clear that a prisoner must establish more than a *de minimis* physical injury to recover compensatory and punitive damages for any *mental or emotional* injury suffered. See *Mitchell*, 294 F.3d at 1312–13 (§ 1997e(e) requires showing of

more than *de minimis* physical injury in order for plaintiff to proceed on claim for mental or emotional injury).

In the present case, Plaintiff requests, among other forms of relief, "compensatory damages in the amount of $6,500 against each named Defendant jointly and severally" and "punitive damages in the amount of $40,000 against each named Defendant jointly and severally." Doc. 1, p. 17. Plaintiff clarifies in his response to Defendants' Motion for Summary Judgment that the damages he seeks are from the actual injuries he received from the alleged excessive use of force by Defendants. Doc. 46-1, pp. 10-11. This Court can find no authority limiting a prisoner's damages for the actual physical injury he may have suffered, even if the court determines the injury was *de minimis*. Section 1997e(e) only bars recovery for mental or emotional injury, and the Eleventh Circuit has held that "[c]ompensatory damages under § 1983 may be awarded [ ] based on *actual injuries* caused by the defendant...." *Williams v. Brown*, 347 F. App'x. 429, 436 (11th Cir. 2009) (emphasis in the original) (citing *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000)). Thus, this Court cannot dismiss Plaintiff's complaint pursuant to Section 1997e(e) as Defendants request.

## VII.  QUALIFIED IMMUNITY GENERALLY

In the alternative, Defendants argue that they enjoy qualified immunity from Plaintiff's claims. Qualified immunity protects government officers sued in their individual capacities from liability for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the

plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). The inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614, (1999) (internal quotation marks omitted); *see Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." (internal quotation marks omitted)).

Under the well-defined qualified immunity framework, a "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotation marks omitted). There is no genuine dispute that the defendant officers were acting in their discretionary capacity in this case; thus, the burden shifts to Plaintiff to show that qualified immunity is inappropriate. *Id*. To do so, the plaintiff must meet the two-part standard established by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223 (2009). First, the plaintiff must prove facts that establish that the officers violated his constitutional rights; and second, the plaintiff must also show that the right involved was "clearly established" at the time of the putative misconduct. *See id*. at 232. This inquiry is "undertaken in light of the specific context of the case, not as a broad general proposition." *Lee*, 284 F.3d at 1194. In *Pearson*, the Supreme Court concluded that a court may assess these factors in any order. 555 U.S. at 236. In Eighth Amendment excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002). This Court need only consider whether Plaintiff has shown that the officers

12

violated his rights under the Cruel and Unusual Punishment Clause of the Eighth Amendment to determine whether Defendants are entitled to qualified immunity.

## VIII.   EXCESSIVE FORCE AS A VIOLATION OF THE EIGHTH AMENDMENT'S CRUEL AND UNUSUAL PUNISHMENT CLAUSE

"[T]he treatment a prisoner receives in prison ... [is] subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation omitted). An Eighth Amendment violation is cognizable under 42 U.S.C. § 1983. *Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1582 (11th Cir. 1995). "The eighth amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to a[n] 'unnecessary and wanton infliction of pain.'" *Bennett v. Parker,* 898 F.2d 1530, 1532 (11th Cir. 1990).

To establish a claim for excessive force, the Plaintiff must show that: (1) the Defendant acted with a malicious and sadistic purpose to inflict harm; and (2) more than *de minimis* injury resulted. *Johnson,* 280 F.3d at 1321 (11th Cir. 2002). The Supreme Court has clarified "[t]he 'core judicial inquiry' ... [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). Although the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson,* 503 U.S. at 7 (*quoting Whitley v. Albers,* 475 U.S. 312, 321 (1986)). Not "every malevolent touch by a prison guard" or "every push or shove" violates a prisoner's constitutional rights, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of

mankind.'" *Hudson*, 503 U.S. 9–10 (1992) (citations omitted). Although injuries need not be severe to support an excessive force claim, the failure to show any injury indicates that the force was not so excessive as to violate the prohibition against an unnecessary and wanton infliction of pain. *Id.* at 10.

In determining whether the force was applied "maliciously and sadistically to cause harm," this court considers: a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Hudson*, 503 U.S. at 7. Further, Courts are to "give a wide range of deference to prison officials acting to preserve discipline and security." *Id*. The determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ*., 128 Fed. App'x. 739, 742 (11th Cir. 2005) (citation omitted). Instead, the relevant inquiry is whether the decision by the government official was egregious, that is, conscience-shocking, at the time the official made the decision. *Id*. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain ... the case should not go to the jury." *Whitley*, 475 U.S. at 322.

Defendants have submitted various documents, affidavits, and a video recording of the incident underlying this lawsuit, to support their argument that they are entitled to the entry of summary judgment in regard to the Plaintiff's claim of excessive force. Docs. 42; 44. Plaintiff responded with twenty-six separate documents for the court to consider. Doc. 46. Because the evidence fails to support a finding that the Defendants acted with a malicious and sadistic

purpose to inflict harm or that a more than *de minimis* injury resulted, Defendants' Motion for Summary Judgment on Plaintiff's excessive force claim should be granted.

### A. *The Need for Force*

The evidence shows that there was a legitimate need for force, as Plaintiff had refused to get his hair cut after repeated requests from Deputy Warden Ivey to do so. Video evidence shows that Plaintiff verbally threatened members of the CERT team while being transferred to the barber chair; resisted CERT team instructions; refused to sit in the barber chair; and struggled with CERT team officers during the duration of his haircut. See DVD 1 of 2, Doc. 44, 0:00-6:00. The Eleventh Circuit has held that "[p]rison guards may use force when necessary to restore order." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). The Circuit Court further adds: "[P]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders." *Danley*, 540 F.3d at 1307. The need for the use of force, the first factor to be considered in the excessive force analysis, is established "by the undisputed evidence that [the inmate] created a disturbance." *Bennett*, 898 F.2d at 1533. Thus, Defendants showed that the use of force was necessary due to Plaintiff's refusals to comply with Warden Ivey's orders for a haircut.

Plaintiff argues that Defendants "maliciously and sadistically" cut his hair because he did not need a haircut. Doc. 46-1, pp. 6-7. He states: "[Defendants] have not provided factual evidence to show that Plaintiff's hair had exceeded the three (3) inch limit." Doc. 46-1, p. 7; see Exhibit 6. This assertion is unsupported by the record. Plaintiff's refusal to comply with Warden McLaughlin's orders, as shown on the video recording—not the length of Plaintiff's hair— establishes that some use of force was warranted, and does not raise a genuine issue of material

15

fact as to the need for force in this case. See *Helton v. Burks*, No. 1:11-CV-77 WLS, 2013 WL 6081764, at *4 (M.D. Ga. Nov. 19, 2013) (citing *Soto v. Dickey,* 744 F.2d 1260, 1267 (7th Cir. 1984) ("When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.")). Further, Defendants are not required to show that Plaintiff's hair needed to be cut because need for the use of force is established "by the undisputed evidence that [the inmate]" refused to follow orders. See *Bennett*, 898 F.2d at 1533.

### B. *The Relationship Between that Need and the Amount of Force Use*

The Plaintiff contends that the amount of forced used—a haircut resulting in a small laceration on the top of his head—was disproportionate to the need for force. Plaintiff's argument rests on his other claim that "there was no need for force as Plaintiff broke no rules." Doc. 46-1, p. 9. As discussed above, the need for force was not due to the length of Plaintiff's hair, but because of his refusal to comply with Deputy Warden Ivey's Orders. Further, the force used in this incident was minimal and proportional to the need to use force. The video shows minimal restraining force used during the entirety of Plaintiff's haircut and placement back in his cell, with Plaintiff suffering a small nick on the top of his head. DVD 1 of 2, Doc. 44, 0:00-10:15. This application of force was appropriately related to the need to restore order and ensure compliance with orders, and this factor weighs against finding a constitutional violation.

### C. *The Extent of the Resulting Injury*

Nor does the third *Whitley* factor—the extent of Plaintiff's injury from the haircut—favor finding a constitutional violation. Although the "nature of the force rather than the extent of the injury" is the relevant inquiry in Eighth Amendment excessive force cases, the extent of injury is still a "factor that may suggest whether the use of force could plausibly have been thought

necessary in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 34-36 (2010) (internal quotations and citation omitted). In most excessive force cases, the extent of injury caused by the alleged excessive force is apparent. See *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (prisoner suffered multiple rib fractures, back injuries, lacerations to the scalp, and abdominal injuries as a result of beating at the hands of prison officials). Here, the extent of injury inflicted by the Defendants' use of the hair clippers, the Plaintiff contends, is obvious. The Plaintiff states in a conclusory fashion that the extent of the injury "increased an already existing back and leg condition," and that his head was covered in blood. Doc. 46-1 at 9. To sustain such a theory, however, the Plaintiff must produce evidence that the alleged constitutional violation he complains of caused Plaintiff's injuries. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995).

Plaintiff's evidence is insufficient to create a genuine issue of material fact. Plaintiff presents no medical evidence, in over one-hundred pages of exhibits, that he suffered any harm other than the small laceration at the top of his head. Plaintiff presents two affidavits from fellow inmates who affirm that Plaintiff's head had "blood dripping" when he was returned to his cell, but video evidence of the haircut shows otherwise. *Compare* Aff. of Brandon Wheat, Doc. 46-24, p. 2; Aff. of Albert Carter, Doc. 46-25, p. 2 with DVD 1 of 2, Doc. 44, 6:00-6:36. As to his allegation that his hip, back, and leg conditions were exacerbated by the haircut, Plaintiff's use of force assessment shows that Plaintiff walked with a normal gait, and that there were no injuries to his trunk, abdomen, or extremities. See GDOC Use of Force Assessment, Doc. 42-3, p. 22; Aff. of Barbara Reeves, LPN, Doc. 42-5, p. 3. As to Plaintiff's argument that this Court should also consider the "humiliation" he suffered in front of "approximately thirty cadets" living in the housing unit (Doc. 46-1, p. 8), such injuries cannot be relied upon to sustain an excessive force

claim under the Eighth Amendment. See *Oliver v. Falla*, 258 F.3d 1277, 1282 (11th Cir. 2001) (holding that in an Eight Amendment case, the Plaintiff must show actual injury).

### D.  *The Extent of the Threat to the Safety of Staff and Inmates*

The fourth factor requires an assessment of "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them." *Whitley*, 475 U.S. at 321. Plaintiff's assertion addressing this factor states: "[t]here was no threat as Plaintiff was secured in restraints." Doc. 46-1, p. 9. Yet, an inmate's refusal to comply with orders creates a threat to the safety of staff and inmates. *See, e.g., Danley,* 540 F.3d at 1308; *McClendon v. Smith,* at 2014 WL 575538 *6 (M.D.Ga. 2014).[6]

As discussed in the Court's analysis of the first factor, the need for force, Plaintiff's refusal to obey orders created a disturbance and thus created a need for the use of force. Plaintiff's refusal to follow orders posed a threat to the safety of staff and inmates in several ways. First, at least six officers' attention was diverted from maintaining security throughout the facility to the task of forcing Plaintiff to comply with orders. Second, a single detainee's refusal to follow orders threatens to undermine officers' authority throughout a facility. And finally, a detainee's non-violent protestations can easily escalate to physical resistance (and officers are not required to wait for this escalation before using physical force). Further, the officers did not continue the use of force once the threat passed and the prisoner was subdued, as shown by video evidence. This factor weighs against the finding of a constitutional violation.

### E.  *Efforts to Temper the Severity of a Forceful Response*

Finally, the Court considers efforts made by the officers' to temper the severity of the force used against Plaintiff. The record shows that Plaintiff received a visual medical

---

[6] This rule is tempered with the clarification that "officers cannot continue the use of force once the threat has passed or the prisoner is subdued." *Skritch v. Thornton,* 280 F.3d 1295, 1303 (11th Cir. 2002); *Campbell v. Sikes,* 169 F.3d 1353, 1374 (11th Cir. 1999).

18

examination approximately one hour after having his hair cut, and was seen the next day for a full use of force examination. The video also reflects that Defendants did not use force once the threat of safety had passed and Plaintiff was subdued. Plaintiff's sole argument as to this factor states: "Defendants did no such thing." Doc. 46-1, p. 9.

The Eleventh Circuit and this court have both addressed appropriate efforts when determining whether or not Defendants attempted to temper the severity of a forceful response. These efforts can include: ceasing the use of force once a detainee has been subdued, *Danley,* 540 F.3d at 1308–09; efforts to check on the detainee's wellbeing throughout the application of force, *Stanfill v. Talton,* 851 F. Supp. 2d 1346, 1373 (M.D. Ga. 2002) (holding that checking on a prisoner every fifteen minutes while he was in a restraint chair constituted an effort to temper the severity of a forceful response); and post injury efforts to ameliorate the effects of force used, such as immediately summoning medical assistance. *Cockrell,* 510 F.3d at 1312.

As discussed above, the use of force did not continue after Defendants stopped cutting Plaintiff's hair, which lasted less than four minutes. Further, prison official did not complete Plaintiff's haircut until later in the afternoon after he was subdued. Pl.'s Dep, p. 43, 14-20. Medical evidence submitted by both parties shows that Plaintiff received a visual medical inspection for his small laceration an hour after he was placed in his cell. Aff. of Joanne Shinholster, LPN, Doc. 42-4, p. 3. Evidence shows that a day later Plaintiff received a use of force assessment, where it was determined that Plaintiff did not need any medical attention, and was told to keep the laceration dry and clean. Aff. of Barbara Reeves, LPN, Doc. 42-5, p. 3. Thus, the fifth factor also weighs against a finding of a constitutional violation.

In light of all five factors considered by the court to determine excessive force, as well as medical evidence presented by the Defendants and testimony presented by Plaintiff, the moving

party has met their burden for summary judgment by proving that there is no genuine issue of material fact and that judgment is required as a matter of law on Plaintiff's excessive force claim, and that they are enjoy qualified immunity.

## CONCLUSION

As set out above, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 42) be granted. It is further **RECOMMENDED** that Plaintiff's Motion for Protective Order (Doc. 39) be **DENIED** because Plaintiff's deposition can be considered on summary judgment under Rule 56(c). Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 22nd day of March, 2016.

        s/ Charles H. Weigle  
        Charles H. Weigle  
        United States Magistrate Judge